CV 03-0038 #1

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JAN 9 2003   DJ

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

AMIN S LAKHA, a married man in his separate estate,

    Plaintiff,

vs

BP WEST COAST PRODUCTS LLC, a Delaware limited liability company,

    Defendant.

NO. CV03 0038R

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES PURSUANT TO PETROLEUM MARKETING PRACTICES ACT

Plaintiff, Amin S Lakha, states and alleges as follows.

## I. JURISDICTION AND VENUE

1    This is an action for injunctive relief and damages brought, *inter alia*, pursuant to the Petroleum Marketing Practices Act ("PMPA"), 15 U.S C § 2801, et seq

2    This court has jurisdiction over the subject matter hereof pursuant to 15 U.S.C. § 2805(a), 28 U S.C § 1331 and 28 U.S.C § 1367

3.    Plaintiff is a resident of King County, Washington

4    Defendant is a Delaware limited liability company that maintains offices in and conducts business in King County, Washington.

---

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO. _____ - 1
DOCS\51255\001\0251238 01

**ORIGINAL**

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777 108th Avenue N E
Suite 1900
P O Box C-90016
Bellevue Washington 98009 9016
(425) 455-1234

5    Venue and jurisdiction are proper in this court

## II. BACKGROUND FACTS: PARTIES AND THEIR CONTRACT

6    Plaintiff and defendant are parties to a certain am/pm PMPA Franchise Agreement dated October 5, 2001 (the "Franchise Agreement") and am/pm Mini Market Agreement also dated October 5, 2001 ("am/pm Agreement") for operation of a gasoline station and convenience store located at 220 S E Everett Mall Way, Everett, Snohomish County, Washington (the "Facility")  The Franchise Agreement and am/pm Agreement are collectively referred to herein as "the Agreements." The Agreements were entered into between plaintiff and Atlantic Richfield Company, a Delaware Corporation  Defendant has represented to plaintiff that it is the successor in interest to Atlantic Richfield Company ("ARCO") with respect to the Agreements  All references herein to "defendant" mean this defendant and ARCO.

7.    The Agreements are an extension or renewal of previous, similar franchise and am/pm agreements that have been continuously in place between plaintiff and ARCO for this Facility dating back to 1992

8.    Throughout this period of operation, plaintiff has maintained regular, routine and constant reporting to and communication with defendant's sales and marketing representatives assigned by defendant for this Facility, including daily, monthly and annual reports of all sales of motor fuel and mini-mart sales conducted from the Facility, on reporting forms and pursuant to the reporting procedures prescribed by defendant

9    During this period, as a result of plaintiff's actions, this Facility has been among the most productive and successful of defendant's retail outlets in Western Washington in terms of motor fuel and am/pm mini-market sales

10    Plaintiff has during this period invested substantial funds and resources toward

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO _____ - 2
DOCS\51255\001\0251238 01

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777 - 108th Avenue N E
Suite 1900
P O Box C-90016
Bellevue Washington 98009 9016
(425) 455 1234

building the level of sales, goodwill and value of the Facility and has paid substantial sums to defendant in rent, franchise fees, royalties and contract renewal fees and has purchased over twenty-five million gallons of motor fuel gasoline from defendant for re-sale from the Facility

11      In March 2002, plaintiff entered into a purchase and sale agreement with an unrelated third party who sought to purchase the business. The Agreements permit such sale, subject to certain conditions set forth in the Agreements.

12      Plaintiff provided prompt notice of such pending sale to defendant and requested defendant's approval of the sale and assignment of the Agreements, in accordance with the terms and conditions of the Agreements permitting such transfer

13.     In response to such notification, instead of processing the application for approval of the assignment, defendant indicated it had plans already then in place not to renew the Agreements when their current term concluded in October 2004, which at that point was approximately 2-1/2 years into the future  As a result, plaintiff's pending sale was canceled by the purchaser

14      Defendant provided no reason for its statement of its intent, 2-1/2 years in advance, not to renew the Agreements.

15.     In June of 2002, plaintiff met with defendant's regional sales manager and franchise consultant, who informed plaintiff that defendant's plan for the Facility was to sell it to a buyer who would enter into a long-term franchise and fuel supply contract with defendant for the Facility

16.     However, defendant would not be able to divest itself of the Facility until, at the earliest, after the end of plaintiff's existing Agreements, which then still had nearly 2-1/2 years remaining

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO _____ - 3
DOCS\51255\001\0251238 01

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777 - 108th Avenue N E
Suite 1900
P O Box C 90016
Bellevue, Washington 98009-9016
(425) 455 1234

17. Accordingly, defendant's representative advised plaintiff to make an offer to purchase the Facility and underlying real property, which plaintiff agreed to do

18 At this same time, plaintiff notified defendant that plaintiff was taking on a co-owner and intended to seek ARCO approval for that, which would take the form of assigning the franchise to plaintiff's existing corporation at the site, which corporation would be jointly owned between plaintiff and his new co-owner and as to which plaintiff would retain at least a fifty percent ownership interest as required by the Agreements

19 Defendant's regional sales manager advised plaintiff not to seek such approval at that time since, if plaintiff were going to be making an offer to purchase the land and Facility, the franchise agreements would in that event have to be replaced at the time of such purchase, which would mean there would be nothing to assign, and it would simply confuse the process to have two seemingly conflicting applications pending at the same time.

20. Based upon those representations and direction given to plaintiff by defendant's regional sales manager, plaintiff submitted a detailed written proposal in July 2002 to purchase the Facility and the land from defendant

21. In September 2002, defendant rejected plaintiff's proposal without any counterproposal or offer to sell the Facility and land to plaintiff

22 In early October 2002, defendant's regional sales manager and franchise consultant again met with plaintiff and advised that defendant desired to take back the Facility and terminate the Agreements prior to the end of their existing term  Plaintiff advised he would be willing to consider such a proposal only if defendant were willing to make concessions with respect to two other facilities owned by plaintiff and also under contract with defendant.

23 Defendant's representative scheduled a follow-up meeting to hear plaintiff's

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO. _____ - 4
DOCS\51255\001\0251238 01

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777  108th Avenue N E
Suite 1900
P O Box C 90016
Bellevue, Washington 98009 9016
(425) 455 1234

counterproposal on October 31, 2002

24. However, prior to the date of that meeting, defendant's representative caused certain "notices of default" to be delivered to the Facility, claiming plaintiff was in default under the Agreements. Such notices were part of a systematic campaign of harassment which defendant commenced following plaintiff's proposal to purchase the Facility and land. For example, the notices included a claim that plaintiff was "in default" under the Agreements because a clerk was "not in uniform" for not wearing a name tag and wearing "capri type pants," a notice there was no food in a food warmer at 4:00 p.m., and a notice that plaintiff was "in default" for not being personally present at the Facility at least 40 hours per week, even though defendant was fully aware plaintiff owns two other ARCO facilities with contracts similar to the Agreements

25. Following the early October meeting in which defendant's representatives proposed obtaining plaintiff's early release of the Agreements, defendant caused an additional series of "default notices" to be sent to the Facility, alleging violation of the Agreements based on events occurring more than two years previously and on the fact that plaintiff operates a portion of the business through a corporation of which he had been the sole shareholder, of which defendant had been aware more than 120 days

26. All of the conditions cited in the pattern of "default notices" delivered to the Facility following plaintiff's meetings with defendant in which defendant sought to acquire the Facility prior to the end of the Agreement were for matters which were either immaterial, no longer existing, or already known and consented to by defendant and of no adverse effect on the franchise relationship.

27. Less than ten days prior to the next-scheduled meeting between plaintiff and defendant's representatives, defendant caused a "Notice of Termination" to be delivered to

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO. _____ - 5
DOCS\51255\001\0251238 01

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777  108th Avenue N E
Suite 1900
P O Box C 90016
Bellevue, Washington 98009-9016
(425) 455-1234

the Facility, on October 22, 2002 The Notice of Termination asserted it was based on the fact that plaintiff uses a corporation for operation of the Facility, which he has done for nearly ten years and as to which defendant has had prior notice, and on an event that occurred in September 2000, more than two years prior to the Notice of Termination, which had been completely concluded and as to which the individual responsible had been discharged and was no longer involved in operation of the Facility

28. Defendant's Notice of Termination is not in compliance with the PMPA and does not justify termination of plaintiff's rights in the Facility and the Agreements

29. Defendant's Notice of Termination was further provided contrary to the requirements of the Gasoline Dealer Bill of Rights Act, RCW Ch. 19.120, and provided in bad faith, contrary to the requirements of that Act.

### III. First Cause of Action - Injunctive Relief Under the PMPA

30. The PMPA establishes minimum federal standards governing termination and nonrenewal of franchise relationships between refiners/suppliers such as defendant and franchisees such as plaintiff.

31. The PMPA prohibits termination or nonrenewal of any agreement subject to PMPA provisions except upon proper grounds

32. The PMPA permits termination or nonrenewal of a PMPA franchise agreement only where the franchisee fails to comply with a provision that is both reasonable and of substantial significance to the franchise relationship.

33. The notice of termination presented by defendant to plaintiff with respect to the Facility and the Agreements did not and does not comply with the requirements of the PMPA for termination of the franchise relationship between plaintiff and defendant.

34. None of the grounds asserted by defendant for termination of the Agreements

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO _____ - 6
DOCS\51255\001\0251238 01

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777  108th Avenue N E
Suite 1900
P O Box C 90016
Bellevue Washington 98009 9016
(425) 455-1234

and of defendant's interest in the Facility warrants termination of the parties' relationship nor of the Agreements

35. Defendant is further estopped from asserting as grounds for termination the bases alleged in the Notice of Termination

36. Plaintiff will sustain substantial losses and irreparable injury unless defendant is enjoined from terminating the Agreements

### IV. Second Cause of Action – Injunctive Relief and Damages Pursuant to the Gasoline Station Dealers Bill of Rights Act

37. In attempting wrongfully to terminate plaintiff's rights in the Facility and under the Agreements, defendant has acted in bad faith and in violation of the Gasoline Station Dealers Bill of Rights Act, RCW Ch 19 120 ("the Act").

38. As a result of defendant's wrongful acts in attempting to interfere with plaintiff's rights and benefits arising pursuant to the Agreements, plaintiff has sustained losses and damages in amounts to be proven at the time of trial.

39. Plaintiff will sustain additional losses and irreparable injury unless defendant is enjoined from continuing in its wrongful attempts to deny plaintiff his rights arising pursuant to the Agreements and the Act

### V. Third Cause of Action - Tortious Interference

40. In addition to seeking to terminate plaintiff's franchise prematurely and in contravention of the PMPA and Gasoline Dealers Bill of Rights Act, defendant's wrongful actions, including the sending of unwarranted "notices of default," harassment of the employees working in plaintiff's facility, interference with plaintiff's reasonable and lawful contracts for sale of the franchise, and refusals to respond to plaintiff's reasonable inquiries

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO _____ - 7
DOCS\51255\001\0251238 01

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777  108th Avenue N E
Suite 1900
P O Box C 90016
Bellevue Washington 98009 9016
(425) 455-1234

regarding operation of the business, have resulted in unnecessary additional costs and losses to plaintiff, all in amounts to be proven at trial

### VI. Prayer for Relief

WHEREFORE, plaintiff prays for the following relief

1. Preliminary injunction and such other orders as the court deems necessary and equitable enjoining defendant from terminating the Agreements;

2. Judgment for permanent injunction enjoining defendant from interfering with and wrongfully attempting to terminate plaintiff's rights pursuant to the Agreement and in the Facility;

3. Judgment in plaintiff's favor against defendant for plaintiff's losses and damages, in amounts to be proven at trial or on further proceedings herein, resulting from defendant's wrongful interference with plaintiff's business and contractual expectancies and wrongful attempts to terminate plaintiff's rights and interests under the Agreements and in the Facility;

4. Judgment in plaintiff's favor against defendant for plaintiff's costs incurred herein, including a reasonable amount for plaintiff's attorney's fees and expenses; and

5. Such other and further relief as the court deems just, equitable and necessary to afford complete relief to plaintiff.

DATED this 9th day of January, 2003.

INSLEE, BEST, DOEZIE & RYDER, P S

By _____
Andrew L. Symons
Attorneys for Plaintiff
W.S.B.A. # 7770

COMPLAINT PURSUANT TO PETROLEUM
MARKETING PRACTICES ACT
CASE NO. _____ - 8
DOCS\51255\001\0251238 01

INSLEE, BEST, DOEZIE & RYDER, P S
ATTORNEYS AT LAW
777  108th Avenue N E
Suite 1900
P O Box C-90016
Bellevue, Washington 98009 9016
(425) 455 1234